RAYNOLD CHRISTENSON AND OTHERS v. WILCOX TRUX, INCORPORATED.[1]

April 26, 1929.

No. 27,183.

Boutelle, Bowen & Flanagan, for appellant.
Victor M. Petersen, for respondents.

TAYLOR, C.

These six actions were tried together and a verdict was returned for the plaintiff in each. The defendant appealed in each from an order denying its alternative motion for judgment non obstante or for a new trial.

Early in 1924 the Lincoln Highway Transportation Company, hereafter called the Lincoln company, was incorporated for the purpose of acquiring motor buses and operating motor bus transportation lines. It advertised for bus drivers who could make a deposit. The six plaintiffs answered this advertisement, and each

[1]Reported in 225 N. W. 146.

made a deposit of $500 and entered into a contract with the Lincoln company on different dates in the latter part of April, 1924. Four of these contracts were identical in form. In each the Lincoln company agreed to employ the driver at a salary of $40 per week, and further agreed "that the investment made by" him entitled him to a pro rata share of the profits of the company. It further provided for a return of the $500 with interest if he should be dismissed by the company or if at the end of a year he should be dissatisfied and quit. In the other two contracts, the Lincoln company agreed to employ the driver at a salary of $40 per week, and in consideration thereof the driver loaned the company $500 and received the Lincoln company's note therefor payable in one year with six per cent interest. The Lincoln company represented to each of these men that the $500 received from him would be applied toward the purchase price of the bus which he was to drive, and that the remainder of the purchase price would be paid by the Lincoln company from money received for the sale of capital stock.

Immediately after making each of the above contracts the Lincoln company entered into a contract with defendant whereby defendant agreed to construct a bus for the Lincoln company and the Lincoln company agreed to pay therefor somewhat more than $9,500, and to pay $500 thereof at the execution of the contract, $3,500 when the bus was delivered, and the remainder in 12 monthly instalments. The initial payment of $500 was paid on each of the six contracts at the time it was executed.

Subsequent developments disclosed that the Lincoln company had very little money. It applied to the state securities commission for a license to sell stock, but after a hearing the application was denied. Prior thereto it had made efforts to sell stock but had been unsuccessful. Thereafter it contracted for a bus line in Iowa and made an attempt to sell stock in that state, but was again unsuccessful. It was never able to make the $3,500 payment on any of the buses for which it had contracted and never obtained any of them. In August, 1924, it went into the hands of a receiver.

In November, 1926, these actions were begun to recover from defendant the several sums of $500 paid to the Lincoln company by

the respective plaintiffs. The court instructed the jury to the following effect: That they were first to determine whether the Lincoln company in procuring these several sums from the several plaintiffs in the manner and under the circumstances shown by the evidence had perpetrated a fraud upon them; that if the jury so found they were then to determine whether the defendant had been a party to and had participated in the perpetration of the fraud; that if the jury found for the plaintiffs on both questions they were entitled to recover; but if the jury found against the plaintiffs on either question they were not entitled to recover.

There is only one question which it is necessary to consider. Assuming that the evidence justified the jury in finding that the Lincoln company had committed a fraud on the plaintiffs, we find nothing in the record which justified them in finding that the defendant was a party to the commission of the fraud. While defendant knew that the money paid to it by the Lincoln company had been paid to the Lincoln company by the plaintiffs and that they expected to drive the buses when built, there is no evidence that defendant had any knowledge of the contracts between the Lincoln company and the plaintiffs or that plaintiffs were other than ordinary stockholders in the company. There was never any fiduciary or contractual relation between the plaintiffs and the defendant; and there is an utter absence of evidence that the plaintiffs entered into their contracts with the Lincoln company in consequence of any representations of the defendant. It is urged that, as the Lincoln company had no license to sell stock or investment contracts, the contracts which it made with the plaintiffs were illegal. This may be true as to the four contracts which contain a provision for sharing in the profits; but defendant did not know of these contracts, and it is clear from the evidence that both the plaintiffs and the defendant believed that the Lincoln company had the right to sell stock and did not learn otherwise until after all the contracts for the construction of buses had been made. The plaintiffs dealt only with the Lincoln company, and the evidence fails to show that defendant had anything to do with those dealings.

The record discloses nothing upon which to predicate a charge of fraud against defendant. 3 Dunnell, Minn. Dig. (2 ed.) § 3839, and cases there cited.

Defendant complains of the instructions concerning the circumstances under which fraud could be imputed to it. As there must be a reversal for the reason above stated, we mention this merely that we may not be understood as approving the instructions.

The order appealed from is reversed in each case.